UNITED STATES DISTRICT COURT          FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
NICOLE SMITH,

                 Plaintiff,                MEMORANDUM
                                        AND ORDER
     - against –

JOHN E. POTTER, Postmaster General,       07-CV-1787 (JG) (JB)
United States Postal Service,
                 Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
A P P E A R A N C E S:

     NICOLE SMITH
         425 Greene Avenue
         Brooklyn, New York 11216
         Plaintiff, *Pro Se*

     BENTON J. CAMPELL
         United States Attorney
         Eastern District of New York
         271 Cadman Plaza East, 7th Floor
         Brooklyn, New York 11201
     By:    Margaret M. Kolbe
         Attorney for Defendant

JOHN GLEESON, United States District Judge:

        Nicole Smith brings this *pro se* action against the Postmaster General of the United States Postal Service ("USPS"), alleging employment discrimination based on her sex and disability. The defendant has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion for judgment on the pleadings is granted.

BACKGROUND

A.   *The Facts*

In March 2004, Smith, a letter carrier with the USPS, received a 14-day suspension with no-time-off when her boss, Thomas Surace, stopped her in the parking lot of the Adelphi Post Office in Brooklyn for driving without a seatbelt.  Incident Log of Complaint, dated May 1, 2007 ("Inc. Log").   Prior to this suspension, Smith had been already been given two notices of 7-day, no-time-off suspensions:  one on January 2, 2004 for failing to deliver late relays to carriers, and the second on January 20, 2004 for truancy.  Defendant's Rule 56.1 Statement ¶ 2; *see also* Def. Ex. B.  On January 26, 2004, Smith was given notice of a 14-day, no-time-off suspension for misdelivery of mail; and on January 28, 2004, she was given a notice of removal. *Id.*  The records do not indicate that she was actually removed from her position.

In January of 2005, Smith requested that her supervisor, Kris Thopphil, allow her to substitute a working day for a day-off because of an emergency.  He initially refused to do so, but then reconsidered.  Inc. Log.  However, in the course of changing her schedule, Smith "encountered some complications," and in accordance with company protocol, she called Thopphil to let him know that she would be unable to work that day.  As a result, he placed her on paid emergency off-duty status for three weeks. *Id.*

Smith catalogues a number of unfair measures that were taken against her beginning in June 2005.  First, she left a package outside a residence when no one answered the door, in violation of USPS protocol, and was suspended for 14 days.  Inc. Log.  Other drivers who made similar mistakes were not subject to such sanctions.  For example, in February 2005 Smith's coworker, Jay Walker, flouted protocol when he left an envelope in the hallway of a

residence complex after no one answered the door. The envelope was stolen, but Walker was not disciplined for his error. *Id.*

On June 21, 2005, Smith's supervisor, Mr. Watson, accused her in strong, profane terms of not caring about her job, and then demanded to see her package scanner to ensure that she had been doing her job. *Id.* On June 30, 2005, Watson again verbally attacked her because she had not yet finished her work for the day, complaining that he needed to get home. There were other employees who were also working late, but they were spared Watson's vitriol.

On September 10, 2005, Smith was written up for improperly scanning a package as "attempted" even though she had not attempted to deliver it. She was again placed on paid emergency off-duty status for three weeks. She argues that she had done nothing wrong -- that for book-keeping purposes, drivers were "supposed" to mark a package as "attempted" even if it had not been attempted. Inc. Log. She notes that none of the male drivers had been reprimanded for similar errors.

In November 2005, Smith was given emergency off-duty status (though she does not explain why), and again suggests that a male colleague was treated dissimilarly for similar conduct. Inc. Log. On November 30, 2005, Thopphil asked Smith to come into his office and warned her not to break his chair when she sat on it. Inc. Log. Her co-workers have affirmed that Thopphil regularly harassed Smith because of her weight. *See* Arthur Ford Aff. On the same day, Smith was issued a notice of removal, effective January 1, 2006. *See* Def.'s Rule 56.1 Statement ¶ 10.

B.   *Smith's EEO Complaint*

Smith filed two administrative complaints alleging discrimination; the first was filed on March 16, 2004 and the second on March 14, 2006. The first alleged that USPS

discriminated against her by issuing the following notices: (1) the January 2, 2004 notice of a 7-day, no-time-off suspension; (2) the January 20, 2004 notice of a 7-day, no-time-off suspension; (3) the January 26, 2004 notice of a 14-day, no-time-off suspension; and (4) the January 28, 2004 notice of removal. *See* Def.'s Rule 56.1 Statement ¶ 2; *see also* Pl.'s Rule 56.1 Statement ¶ 3. On October 12, 2004, the Postal Service's EEO Compliance and Appeals Processing Center ("USPS-EEO") issued a Notice of Final Decision finding no discriminatory action. Def.'s Rule 56.1 Statement ¶ 3; *see also* Def. Ex. B. In its decision, the USPS-EEO informed Smith of her right to file a civil action within 90 days in federal court or to file an appeal with the Office of Federal Operations of the United States Equal Employment Opportunity Commission ("EEOC-OFO") within 30 calendar days of receipt of the decision. *Id.* Smith filed a Notice of Appeal with the EEOC-OFO on December 13, 2004, and on September 26, 2005, the EEOC-OFO issued a decision affirming the USPS-EEO's decision that Smith had not been discriminated against. Def.'s Rule 56.1 Statement ¶ 6, 7; *see also* Def. Ex. D, E. In the September 26, 2005, decision, Smith was apprised of her right to request reconsideration within 30 days and of her right to file a civil action in federal court within 90 days. Def.'s Rule 56.1 Statement ¶ 8; *see also* Def. Ex. E. She did neither.

On January 4, 2006, Smith requested EEO counseling and the documents necessary to initiate the second administrative complaint. She alleged that the USPS discriminated against her on the basis of her race and sex when (1) it issued the September 10, 2005 notice of emergency placement in off-duty status (effective October 15, 2005); (2) it issued the November 30, 2005 notice of removal; and (3) her supervisor made comments about her weight on November 30, 2005. Def.s Rule 56.1 Statement ¶ 13; *see also* Def. Ex. H. She filed a formal complaint reciting the same charges with the USPS-EEO on March 14, 2006.

On March 28, 2006, the agency dismissed the complaint on the grounds that (1) the complaint based on the events of September 10, 2005 was not timely because Smith did not contact an EEO counselor within 45 days of the incident; (2) the claim regarding the notice of removal was barred by 29 C.F.R. § 1614.07(a)(4) because Smith had already raised it in a negotiated grievance procedure; and (3) the complaint about the November 30, 2005 comments did not state a claim upon which relief could be granted. Def.'s Rule 56.1 Statement ¶¶ 14-16; *see also* Def. Ex. K. The March 28, 2006 decision advised Smith that she could file an appeal with the EEOC within 30 days of receipt of the decision or file a claim in federal court within 90 days. Def.'s Rule 56.1 Statement ¶ 17; *see also* Def. Ex. K. Smith received the decision on March 29, 2006. Def. Ex. L.

On June 13, 2006, long after the 30-day deadline had passed, Smith requested an appeal, and the EEOC-OFO informed her that any papers in support of her appeal should be filed within 30 days of her filing of the appeal request. Def. Ex. N. On August 14, 2006, Smith faxed the EEOC a statement explaining that she had not filed a timely appeal because she had misplaced her papers and that she had been unable to get a copy of them in time. Def. Ex. O. On November 15, 2006, the EEOC dismissed her appeal as untimely, and informed her of her right to request reconsideration of the decision within 30 days and of her right to file a civil action in federal court within 90 days. Def. Ex. P. The decision also informed her that if she filed both a request for reconsideration and a civil action, then the filing of the civil action would terminate the administrative processing of her complaint. *Id.*

On December 11, 2006, Smith applied for reconsideration of her claim, and on February 27, 2006, the EEOC-OFO denied her request for reconsideration. Def. Ex. Q, R.

C. *Smith's Federal Claims*

Following the administrative dismissal of her claims, Smith filed the instant complaint on May 1, 2007. She alleges claims against her employer pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). Specifically, Smith alleges that from January 2005 to November 2005, she was discriminated against and ultimately terminated from her position because of her sex and her disability. Compl. at 4.

Potter seeks dismissal on the ground that Smith did not timely file the complaint in this Court, and in the alternative, on the ground that Smith did not timely exhaust her administrative remedies.

## DISCUSSION

A. *Standard of Review*

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." In deciding a Rule 12(c) motion, a court applies the same standard that applies to a motion under Rule 12(b)(6). *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). A court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995). Accordingly, I must in general accept the factual allegations in the complaint as true. *See Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

The plaintiff is not entitled to unlimited favorable inferences at the motion to dismiss stage, however. The Supreme Court recently held that the standard governing a complaint's legal sufficiency is in part one of "plausibility," *id.* at 1968, no longer governed by the "no set of facts" admonition of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The new

plausibility standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics omitted) (interpreting *Twombly*).

When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated in it by reference; (3) matters of which judicial notice may be taken; or (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

When matters outside the pleadings are presented in connection with a motion to dismiss, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). The Second Circuit permits conversion of a motion to dismiss into a motion for summary judgment provided the non-moving party has had "reasonable opportunity to meet facts outside the pleadings." *G & A Books, Inc. v. Stern*, 770 F.2d 288, 295 (2d Cir. 1985); *see also Sun Trading Distributing Co., Inc., v. Evidence Music, Inc.*, 980 F.Supp. 722, 726 (S.D.N.Y. 1997) (allowing conversion "[b]ecause both parties had a reasonable opportunity to conduct discovery prior to the filing of this motion and have submitted matters outside the pleadings with their motion papers"). However, "[w]hen a plaintiff chooses not to attach to the complaint or incorporate a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take it into consideration in deciding the defendant's motion to dismiss, without converting the proceeding into one for summary judgment."

7

*Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006) (internal quotation omitted)).

B.     *The Relevant Statutes*

As a federal employee, Smith may seek relief for employment discrimination and retaliation solely through Title VII (race, sex, national origin) and the Rehabilitation Act, 29 U.S.C. § 706(8)(B) (disability). *See Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976); *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) ("Title VII is the exclusive remedy for discrimination by the federal government on the basis of race, religion, sex, or national origin."). Smith did not seek relief for discrimination on the basis of her disability under a specific act, so I deem her disability claim to be brought pursuant to the Rehabilitation Act.

C.     *Failure to Exhaust Administrative Remedies*

A Title VII and Rehabilitation Act plaintiff "must exhaust available administrative remedies in a timely fashion." *Briones*, 101 F.3d at 289; *see also Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998). Timely exhaustion of administrative remedies "requires an employee to comply with applicable EEOC regulations." *Jenkins v. Potter*, 271 F. Supp. 2d 557, 562 (S.D.N.Y. 2003).

The regulations governing EEOC claims provide that after a complainant timely files a formal administrative complaint, the employee may either file suit in federal court or appeal to the EEOC. 29 C.F.R. §§ 1614.407(a),(b), 1614.401(a). If the complainant chooses the latter, she must appeal to the EEOC-OFO within 30 days of receipt of the agency's final decision. *See* 29 C.F.R. § 1614.402(a). Thereafter, the complainant must file suit in federal court within 90 days of the EEOC-OFO's final decision on the appeal or within 180 days of filing the appeal if the EEOC-OFO has not issued a decision by that time. *See* 29 C.F.R. §

1614.407(c), (d). The principles of equitable tolling apply. *See, e.g. Jenkins*, 271 F. Supp. 2d at 564.

The USPS-EEO issued a decision on March 28, 2006 dismissing Smith's complaint. The decision was mailed to Smith by first-class mail, and delivery was confirmed on March 29, 2006. Def. Ex. L. Under the EEOC regulations and as explained in the March 28 decision, Smith had 30 days from the date of receipt -- until April 29, 2006 -- to file a notice of appeal with EEOC-OFO. However, it took Smith until June 13, 2006 to do so, long after the deadline had passed.

D.   *Equitable Tolling*

Smith argues in opposition to the motion that she is entitled to equitable tolling. I disagree. Equitable tolling is permissible in this context, *Zipes v. Trans World Airlines, Inc.* 455 U.S. 385, 393 (1982); *see also Jenkins v. Potter*, 271 F. Supp. 2d at 564, but only in "rare and exceptional circumstances," *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000), which prevent the plaintiff "in some extraordinary way from exercising his rights." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (quotation marks omitted). Equitable tolling would be available, for example, if the plaintiff "actively pursued judicial remedies but filed a defective pleading during the specified time period," was "unaware of his or her cause of action due to misleading conduct of the defendant," or if a "medical condition or mental impairment prevented her from proceeding in a timely fashion." *Zerilli-Edelglass v. New York City Trans. Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citations omitted).

Smith is not eligible for equitable tolling, for she has neither (1) "acted with reasonable diligence during the time period she seeks to have tolled," nor has she (2) proven that

9

her circumstances are so extraordinary that the doctrine should apply. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

Smith claimed at oral argument that even though delivery of the letter was confirmed, she did not actually receive the letter until much later. However, in a letter to the EEOC-OFO dated August 14, 2006, Smith explained why the notice of appeal was filed late: "In an attempt to appeal the decision of your dismissal of my claim, in my distress, I misplaced it, and was fraught with various methods and procedures which to my knowledge I was to follow." Def. Ex. O. While it is possible that Smith could have received the letter after March 29, 2006 *and* could also have misplaced it, her letter does not even mention late receipt.

To resolve the factual discrepancy, I held an evidentiary hearing. Smith testified that she received the letter after March 29, 2006, and was therefore unable to file a notice of appeal by the April 29 deadline.[1] I do not credit her testimony. As a result, Smith is not entitled to equitable tolling, and, accordingly, she has not timely exhausted her administrative remedies.[2]

---

[1] An evidentiary hearing is appropriate at the motion to dismiss phase in order to determine whether the circumstances warrant equitable tolling. *See, e.g., Brown v. Parkchester South Condominiums*, 287 F.3d 58 (2d Cir. 2002).

[2] In light of the foregoing, I need not address the government's argument that Smith's federal court action is untimely. Still, I am troubled by the misleading instructions that the EEOC provides regarding the filing deadline for a civil action. The instructions included in the decision state that the complainant has a right to file an action in federal court within 90 calendar days from the date of receipt of the Commission's final decision, but the Commission also provides instructions as to how to proceed with a request for reconsideration of the final decision. While the decision states that filing an action in federal court would terminate the administrative processing of the claim, it does not specifically state that the 90-day period would not be tolled if a request for reconsideration were made.

Smith, like others before her, misunderstood the instructions. She reasonably believed that moving for reconsideration would toll the 90-day deadline pending the outcome of that motion. The EEOC could easily clarify the tolling procedure by explicitly stating that the 90-day deadline is not tolled even if the complainant requests reconsideration.

## CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: September 19, 2008
       Brooklyn, New York